Doe v. Sessions

BIA
Poczter, IJ
A205 298 083

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of July, two thousand seventeen.

PRESENT:
>       JON O. NEWMAN,
>       RICHARD C. WESLEY,
>       CHRISTOPHER F. DRONEY,
>             *Circuit Judges.*

_____

JOHN DOE, AKA SUVENDRAN
KANAPATHIPILLAI,
>       *Petitioner,*

v.                                          16-1464
                                            NAC

JEFFERSON B. SESSIONS III,
UNITED STATES ATTORNEY GENERAL,
>       *Respondent.*

_____

FOR PETITIONER:          Theodore N. Cox, New York, NY.

FOR RESPONDENT:          Chad A. Readler, Acting Assistant
                         Attorney General; Russell J.E.
                         Verby, Senior Litigation Counsel;
                         John D. Williams, Trial Attorney,

Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Suvendran Kanapathipillai, a native and citizen of Sri Lanka, seeks review of an April 27, 2016, decision of the BIA affirming a July 24, 2014, decision of an Immigration Judge ("IJ") denying Kanapathipillai's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Suvendran Kanapathipillai,* No. A205 298 083 (B.I.A. Apr. 27, 2016), *aff'g* No. A205 298 083 (Immig. Ct. N.Y. City July 24, 2014). We assume the parties' familiarity with the underlying facts and procedural history in this case.

Under the circumstances of this case, we have reviewed the decision of the IJ as supplemented by the BIA. *Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). The applicable standards of review are well established. *See* 8 U.S.C. § 1252(b)(4)(B); *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 165-66

(2d Cir. 2008); *Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009).

## I.  Adverse Credibility Determination

For asylum applications like Kanapathipillai's governed by the REAL ID Act, the agency may "[c]onsidering the totality of the circumstances," base a credibility finding on inconsistencies in an asylum applicant's statements and other record evidence with or "without regard to whether" those inconsistencies go "to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii); *see also Xiu Xia Lin*, 534 F.3d at 163-64.  For the reasons that follow, we conclude that substantial evidence supports the agency's determination that Kanapathipillai was not credible.

In reaching its decision, the agency properly relied on two types of material inconsistencies: (1) inconsistencies about why the army targeted Kanapathipillai, and (2) inconsistencies about the dates of the alleged persecution.  8 U.S.C. § 1158(b)(1)(B)(iii).  Regarding the first type of inconsistency, Kanapathipillai offered different responses for why the government targeted him, ranging from a lack of any knowledge to the army's belief that he was a member of the

3

Liberation Tigers of Tamil Eelam ("LTTE"). Kanapathipillai contends that the IJ mischaracterized the evidence and should have credited his explanations. But the record reflects evolving statements and the IJ was not required to accept Kanapathipillai's various explanations. *Majidi v. Gonzales*, 430 F.3d 77, 80-81 (2d Cir. 2005). Moreover, because the agency's interpretation is grounded in the record, we cannot find to the contrary. *See Siewe v. Gonzales*, 480 F.3d 160, 168 (2d Cir. 2007) ("[R]ecord support for a contrary inference—even one more plausible or natural—does not suggest error.").

Regarding the second type of inconsistency, the agency reasonably relied on Kanapathipillai's inconsistent dates for when the army detained him and his father. The IJ noted that Kanapathipillai testified that his first incident with the army occurred in January 2012 and later testified that it occurred in the last month of that year. The IJ also noted that Kanapathipillai testified that his father was arrested in the first month of 2011, but his written statement says that the father's arrest occurred in the twelfth month of 2011. Kanapathipillai contends that the IJ exaggerated the inconsistencies and should have credited his explanations, such

as confusion and nervousness. But the inconsistencies were apparent and Kanapathipillai's explanations do not compel a different conclusion. *Majidi*, 430 F.3d at 80-81.

As the agency observed, Kanapathipillai also failed to rehabilitate his testimony with corroborating evidence. *See Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007) (explaining that "failure to corroborate . . . testimony may bear on credibility[] because the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question"). He alleged that the army interrogated his brother in January 2014, but his mother's letter omitted that information and he did not provide a letter from his brother. *See Xiu Xia Lin*, 543 F.3d at 166-67 & n.3 (concluding that omissions from corroborating documents such as letters from family members are the same as inconsistencies and may be relied on as part of an adverse credibility determination).

Kanapathipillai's final challenge to the agency's adverse credibility determination—that the IJ overlooked medical evidence of his parents' injuries that supported his story—also fails. "[W]e presume that an IJ has taken into account all of

the evidence before [her], unless the record compellingly suggests otherwise." *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 336 n.17 (2d Cir. 2006). Here, the IJ stated that she "considered the entire record including all of the documents whether or not they are specifically mentioned," and nothing in the record suggests otherwise. Moreover, as the BIA reasoned, evidence of his parents' injuries cannot cure the inconsistencies addressed above, which are sufficient to support the IJ's adverse credibility determination.

## II. Future Persecution as a Returning Asylum Seeker

Kanapathipillai asserted an independent claim that he would be persecuted for having left Sri Lanka to seek asylum abroad. To be eligible for asylum on this basis, Kanapathipillai had to establish that the Sri Lankan government had a pattern or practice of persecuting returning asylum seekers and would know that he falls into that category. *See Hongsheng Leng v. Mukasey*, 528 F.3d 135, 142-43 (2d Cir. 2008); *Kyaw Zwar Tun v. U.S. INS*, 445 F.3d 554, 564 (2d Cir. 2006). We need not reach the agency's finding that Kanapathipillai failed to show that the government would discover his status because the agency reasonably concluded that Kanapathipillai

failed to show targeting of asylum seekers that was "so systemic or pervasive as to amount to a pattern or practice of persecution." *Mufied v. Mukasey*, 508 F.3d 88, 92 (2d Cir. 2007) (internal quotation marks omitted).

The bulk of the country conditions evidence was outdated, and Kanapathipillai did not submit any evidence showing that prior conditions persisted. Particularly, the most recent evidence identifies only two individuals who were returned to Sri Lanka and their circumstances are distinguishable: both men fled Sri Lanka with a large group, and only the organizer of the trip was alleged to have suffered physical harm on return. Moreover, other evidence reflected that detentions generally lasted only a few days to two weeks and related to charges of illegally departing Sri Lanka, an offense punishable by a fine. *Qun Yang v. McElroy*, 277 F.3d 158, 163 n.5 (2d Cir. 2002) ("Possible persecution for violation of a statute applicable to all citizens would not standing alone constitute a valid basis for asylum."); *Saleh v. U.S. Dep't of Justice*, 962 F.2d 234, 239 (2d Cir. 1992) (same). Given this evidence, Kanapathipillai has not shown "systemic and pervasive" harm that rises to the level of persecution. *Siewe*, 480 F.3d at 167

7

("Decisions as to . . . which of competing inferences to draw are entirely within the province of the trier of fact." (internal quotation marks omitted)). Additionally, some evidence links detention to suspected LTTE support, a ground on which Kanapathipillai was found incredible. Because Kanapathipillai's claim for asylum, withholding of removal, and CAT relief are all based on the same factual predicate, the adverse credibility determination and pattern or practice findings are dispositive. *Paul v. Gonzales*, 444 F.3d 148, 155-57 (2d Cir. 2006).

Finally, Kanapathipillai argues that the BIA failed to consider his claim that Sri Lanka persecutes all Tamils, but remand is not necessary because he was not credible regarding his past harm or fear of future harm as a Tamil or suspected LTTE member. *Ramsameachire v. Ashcroft*, 357 F.3d 169, 178 (2d Cir. 2004) (holding that "well-founded fear of future persecution . . . requires that the alien present credible testimony that he subjectively fears persecution and establish that his fear is objectively reasonable"). Moreover, he did not argue before the IJ that there is a pattern or practice of persecution of Tamils generally. *See Prabhudial v. Holder*, 780

F.3d 553, 555 (2d Cir. 2015) ("The BIA may refuse to consider an issue that could have been, but was not, raised before an IJ.").

For the foregoing reasons, the petition for review is DENIED. As we have completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DISMISSED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34.1(b).

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

9